# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JOY OKEKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:07CV538 |
| | ) | |
| NORTHWEST AIRLINES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

**SHARP, Magistrate Judge**

This matter comes before the Court on the Motion for Summary Judgment filed by Defendant Northwest Airlines, Inc. (Docket No. 42.) Plaintiff has responded to this motion, and Defendant filed a reply brief. (Docket Nos. 46, 47.) For the reasons stated herein, Defendant's motion will be granted, and this action will be dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is an African-American female who purchased airfare tickets for herself and her daughter to travel from Raleigh-Durham International Airport (RDU) to Lagos, Nigeria on May 11, 2005. (Docket No. 25, Amended Complaint ("Am. Compl.") at 1-2.) They planned to attend a memorial service for Plaintiff's mother and a wedding in which daughter Christicel Okeke was in the wedding party and Plaintiff was "Mother of the Day" and

Sponsor. (*Id*. at 2.) Plaintiff, her daughter, and her husband, Dr. Jim Okeke, arrived at the RDU Northwest Airlines ticket counter on May 11, 2005 where they expected to be charged for three excess checked bags. (*Id*.) However, the Northwest ticket agent charged them for a fourth excess bag. (*Id*.) A disagreement over the fees ensued, and a Northwest employee asked Plaintiff's husband to leave the airport. (*Id*. at 3.) Dr. Okeke left the airport, and Plaintiff paid $160 for the disputed excess bag. (*Id*.) Plaintiff and her daughter left the ticket counter, passed through the security checkpoint, but then realized that she did not have the gate number for the flight. (*Id*.) Plaintiff returned to the ticket counter for the gate information. (*Id*.) She was then informed by the Northwest employee that she would miss the flight and needed to retrieve her luggage. (*Id*.) Plaintiff suffered a panic attack and emergency medical services were called to assist her. (*Id*.)

Plaintiff made arrangements to travel the next day on May 12, 2005. (*Id*. at 4.) On May 12, Plaintiff and her daughter checked in at the airport and proceeded to the gate where they were "fourth in line to board the plane." (*Id*.) While they were in line, a Northwest employee responsible for boarding the plane informed Plaintiff that she had too many carry-on bags. (*Id*.) Plaintiff asked for the Northwest ticket counter employee with whom she had checked in to be called to the gate. (*Id*.) When that employee arrived at the gate, she informed Plaintiff that she did not see an extra bag that Plaintiff had with her. (*Id*.) Plaintiff was informed that she needed to pay $160 as an excess luggage fee. (*Id*.) Plaintiff asked to

-2-

see manager Jay Chapel who informed her that she would have to pay the fee. (*Id*.) Plaintiff's offer to throw away the bag was rejected, and she was told that she would have to pay the fee or not board the flight. (*Id*. at 5.) Plaintiff tendered her credit card for the fee and asked for a camera to photograph the bag for which she was being charged $160. (*Id*.) Manager Chapel then informed Plaintiff that neither she nor her daughter would be traveling with Northwest Airlines. (*Id*.)

Plaintiff attempted to enter the plane but was blocked by Northwest employees. (*Id*.) The police were called to the gate. (*Id*.) Plaintiff fainted and was taken to Durham Regional Hospital. (*Id*.) The following week, Plaintiff traveled to Nigeria via British Airways. (*Id*.) As a result of these events, Plaintiff and her daughter missed the wedding which was held on May 14, 2005. (*Id*. at 6.) Plaintiff now believes that she was placed on Defendant's "no-fly" list. (*Id*.)

Plaintiff's Amended Complaint raises two causes of action: (1) a violation of 42 U.S.C. § 1981 due to racial discrimination (*id*. at 6-8); and (2) breach of the airfare contract and the duty of good faith and fair dealing by Defendant terminating the ability of Plaintiff and her daughter to travel to Nigeria (*id*. at 8-9). Plaintiff seeks damages as relief as well as attorney's fees and costs. (*Id*. at 9.)

On March 30, 2009, Judge James A. Beaty entered an order granting Defendant's motion to dismiss Plaintiff's claim based on 42 U.S.C. § 1981. (Docket No. 33.) Therefore,

Plaintiff's "only remaining claim in the present case is a claim for breach of contract, based on Defendant's alleged breach of the airfare agreement by refusing [Plaintiff's] travel to Nigeria." (*Id*. at 4.) The court denied Defendant's motion to dismiss the contract claim without prejudice to Defendant raising its defenses as part of a motion for summary judgment. (*Id*. at 5.)

Plaintiff originally filed a Complaint regarding these events on April 25, 2006 in state court. (Docket No. 46, Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J., at 1.) On June 6, 2006, Plaintiff dismissed that action voluntarily without prejudice because Defendant had filed for bankruptcy protection on September 14, 2005. (*Id*.) On October 23, 2006, Plaintiff obtained through Defendant's bankruptcy counsel a stipulation. (*Id*., Ex. B.) By this stipulation,

> Plaintiff released her claims for intentional misconduct by the Defendant as well as her claims for punitive or exemplary damages. In exchange, the Stipulation lifted the Bankruptcy stay to allow Plaintiff to assert her claims for "pre-petition breach of contract and related injuries," but limited Plaintiff to recovery "solely from the insurance coverage, if any, available under an insurance policy" issued to Defendant to satisfy such claims.

(Docket No. 33 at 2.) On June 21, 2007, Plaintiff filed her original Complaint in this action in state court which Defendant removed to this Court on July 18, 2007. (Docket No. 1.)

In the present motion, Defendant argues that Plaintiff's breach of contract claim (including her associated claim of breach of the duty of good faith and fair dealing) should be dismissed on several bases. (Docket No. 43, Def.'s Mem. in Supp. of Mot. for Summ. J.)

-4-

Defendant first contends that this action is controlled by the Montreal Convention on air travel which provides for a two-year statute of limitation, and Plaintiff did not file this action within the limitation period. (*Id*. at 5-11.) The other bases for dismissal are that Plaintiff released Defendant from the breach of contract claim by the stipulation she entered into in Bankruptcy Court, that Defendant cannot be in breach of the airfare agreement because Plaintiff admits that she was carrying too many bags on the Northwest flight, and that, even if the breach of contract claim survives summary judgment, Plaintiff's claims for medical expenses, pain and suffering, and mental anguish must fail because such damages are not allowed in breach of contract cases. (*Id*. at 1.)

Plaintiff responds with argument that the Montreal Convention does not apply to her case because she never boarded the aircraft. (Docket No. 46 at 5.) Plaintiff also contends that, even if the Montreal Convention's two-year statute of limitation does apply to her claim, Defendant's bankruptcy tolled the limitation period. (*Id*. at 7-8.) Plaintiff further contends that the stipulation she signed does not bar her contract claim, that she did not have too many bags to board the plane, and that she should be allowed to recover beyond the contract price for mental anguish and physical injury. (*Id*. at 9-10.)

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only when no genuine issue of material fact exists. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). A genuine issue of fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court considering a motion for summary judgment must view all facts and draw all reasonable inferences from the evidence before it in a light most favorable to the non-moving party. *Id.* at 255. The proponent of summary judgment "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick County Comm'rs,* 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If the movant carries this burden, then the burden "shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." *Id.* at 718-19 (citing *Anderson*, 477 U.S. at 247-48.) A mere scintilla of evidence supporting the non-moving party's case is insufficient to defeat a motion for summary judgment. *See, e.g., Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994); *see also Anderson*, 477 U.S. at 248 (non-moving party may not rest upon mere allegations or denials.)

**B.      Analysis**

    **1.      Application of the Montreal Convention**

The first issue to be determined is whether the Montreal Convention (the "Convention") applies to Plaintiff's breach of contract claim. Plaintiff relies upon *Wolgel v. Mexicana Airlines*, 821 F.2d 442 (7th Cir. 1987) to support her contention that because she never boarded the Northwest aircraft, Article 19 of the Convention does not apply to her claims. (Docket No. 46 at 4-6.) In *Wolgel*, the plaintiffs planned to travel from Chicago to Acapulco, Mexico, but when they "presented their tickets and baggage to Mexicana's passenger agent, they were informed that no seats were available on their flight." *Wolgel*, 821 F.2d at 443. Plaintiffs filed suit in state court raising claims of breach of contract, tortious breach of a contractual relationship, and discriminatory bumping in violation of a federal statute. *Id*. Defendant removed the case to federal court and argued that the complaint should be dismissed based on the two-year statute of limitation contained in Article 29 of the Warsaw Convention. *Id*. The district court dismissed on that basis. *Id*. The Seventh Circuit, however, reversed after finding that the drafters of the Convention "did not intend the word 'delay' in Article 19 to extend to claims, such as the Wolgels', that arise from the total nonperformance of a contract." *Id*. at 444. Article 19 provided at the time that "[t]he carrier shall be liable for damage occasioned by delay in the transportation by air of

-7-

passengers, baggage, or goods." *Id*. Thus, the two-year statute of limitation did not bar the plaintiffs' claim.

Similarly, in *Weiss v. El Al Israel Airlines, Ltd.*, 433 F. Supp. 2d 361 (S.D.N.Y. 2006), *aff'd*, 309 Fed. App'x 483 (2nd Cir. 2009), the plaintiffs were to fly from New York to Jerusalem and arrived at the airport "a little more than one hour before the flight and were cleared by airline security, but were involuntarily denied boarding because the flight had been oversold by the airline." *Id*. at 363. Plaintiffs remained at the airport for two days on stand-by status before flying on a different airline. *Id*. During this time, plaintiffs allegedly suffered emotional stress, worry, and anxiety. *Id*. They sued under federal regulations and state tort and contract law. *Id*. at 362.

The *Weiss* court recognized that Article 29 of the Montreal Convention "means that for all air transportation to which the Convention applies, if an action for damages, however founded, falls within one of the Convention's three damage provisions, the Convention provides the sole cause of action under which a claimant may seek redress for his injuries." *Id*. at 365; *accord El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 176 (1999) (substantially same provision of Warsaw Convention, Article 24, "precludes a passenger from maintaining an action for personal injury damages under local law when her claim does not satisfy the conditions for liability under the Convention"). The three damage provisions of the Convention are: (1) Article 17 which provides for carrier liability for the death or bodily

injury of a passenger or the destruction, loss of or damage to her baggage; (2) Article 18 which provides for damage to cargo; and (3) Article 19 which, as set out above, provides for carrier liability occasioned by "delay" in the carriage of passengers, baggage, or cargo. *Weiss*, 433 F. Supp. 2d at 365. Following the reasoning of *Wolgel* with regard to Article 19, the *Weiss* court found that "plaintiffs' bumping claims should be read as grounded in a cause of action for non-performance of contract and not delay. They are, therefore, not preempted by the Montreal Convention." *Id*. at 369.

Nonetheless, Defendant does not argue that Article 19 applies to Plaintiff's contract claim. Rather, Defendant relies upon cases finding that the plaintiffs' claims were preempted by Article 17 of the Convention. *See* Docket No. 43 at 8; *Tseng*, 525 U.S. at 161 ("We therefore hold that recovery for a personal injury suffered 'on board [an] aircraft or in the course of any of the operations of embarking or disembarking,' Art. 17, 49 Stat. 3018, if not allowed under the Convention, is not available at all."); *Marotte v. American Airlines, Inc.*, 296 F.3d 1255, 1260-61 (11th Cir. 2002) (finding that Convention's two-year limitation period applied because plaintiffs were in process of embarking aircraft – boarding passes in hand, at gate, attempting to board – when attacked); *King v. American Airlines, Inc.*, 284 F.3d 352, 355 (2nd Cir. 2002) (discrimination claims that arise in course of embarking (plaintiffs boarded bus transporting them from terminal to aircraft) are preempted by Article 17).

Article 17 of the Convention provides that a carrier "is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking." Convention for the Unification of Certain Rules Relating to International Transportation by Air Done at Montreal on 28 May 1999, *reprinted in* S. Treaty Doc. No. 106-45, *available at* 1999 WL 33292734; *see Weiss*, 433 F. Supp. 2d at 362 n.2. If Plaintiff Okeke's cause of action falls within the substantive scope of Article 17, regardless of whether liability may be established, any relief must come under the terms of the Convention. *See King*, 284 F.3d at 358-59. "Although by its terms Article 17 limits recovery to passengers who have sustained 'bodily injury,' the Supreme Court in *Tseng* made clear that this restriction on liability affects neither the analysis of the substantive scope of the provision nor its preemptive effect." *Id*. at 359. Ultimately, Plaintiff Okeke's claims fall within the substantive scope of Article 17 if Plaintiff's injury "arose from events that took place during embarkation."[1] *Id*.

---

[1] In attempting to distinguish *Tseng*, Plaintiff mistakenly conflates the scope inquiry and the liability inquiry. (Docket No. 46 at 6; *see Acevedo-Reinoso v. Iberia Lineas Aereas de Espana, S.A.*, 449 F.3d 7, 13 (1st Cir. 2006) (district court erroneously conflated the applicability of the Convention with liability under the Convention; Convention's applicability rests on determination of whether passenger's injury occurred on board aircraft or in course of embarking or disembarking).) Plaintiff alleges in her Amended Complaint that she suffered "severe and painful physical and emotional injuries," and therefore her claim is for "bodily injury" and falls within the scope of Article 17. (Docket No. 25 at 8.)

Plaintiff Okeke's injury arose, according to her deposition testimony, when she was at the gate ready to board the aircraft. (Docket No. 43, Ex. A, Deposition of Joy N. Okeke, at 31.) When Defendant's agent told Plaintiff that she was not going to travel on Defendant's airline, Plaintiff picked up her luggage, told her daughter "let's go," and "started heading towards the aircraft." (*Id*. at 32.) Plaintiff says that she got "in there" but "the captain or one of them was standing in front of the aircraft" to block her from entering the aircraft. (*Id*.)

Courts consider four factors to determine whether a passenger is "in the course of any of the operations of embarking." *King*, 284 F.3d at 359. These factors are: (1) the activity of the passengers at the time of the accident; (2) the restrictions, if any, on their movements; (3) the imminence of actual boarding; and (4) the physical proximity of the passengers to the gate. *Id*. "Applying this test, courts have previously held that passengers who had not yet left the terminal were nonetheless engaged in an operation of embarkation when they had gathered at the departure gate in order to board the bus that would take them to the plane." *Id*. (citing cases). According to Plaintiff's testimony, she was at the gate ready to board the plane and only failed to board the plane because she was physically blocked by someone either in the gateway or at the aircraft door. She was in the course of embarking when she was injured. *See id*. Plaintiff must therefore bring her claim under the Convention, in full

-11-

compliance with its two-year statute of limitation period, or not at all.[2] *See id.* at 360; *see also Tseng*, 525 U.S. at 161.

### 2. Compliance with Statute of Limitation

Plaintiff does not dispute that if the Convention covers her claim, she is subject to a two-year statute of limitation. (Docket No. 46 at 7.) This two-year period runs from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the carriage stopped. *Marotte*, 296 F.3d at 1258 n.1. Plaintiff's flight should have arrived on or before May 14, 2005. (Docket No. 43, Ex. A at 18.) Two years from that date was May 14, 2007. Plaintiff filed her original Complaint in this action (in state court) on June 21, 2007, beyond the limitation period. (Docket No. 1, Ex. A.)

### 3. Extension or Tolling of Limitation Period

Plaintiff does not contest Defendant's showing that the majority of circuits have concluded that a filing in violation of a stay is void rather than voidable. (Docket No. 46 at 7.) Therefore, Plaintiff's filing of her initial action when the bankruptcy stay was in place

---

[2] The *Wolgel* and *Weiss* plaintiffs apparently never progressed beyond the airline ticket counter before they were told that they had been bumped. Those courts did not discuss the possible application of Article 17 presumably because those plaintiffs' injuries did not arise in an operation of embarkation. *See Tseng*, 525 U.S. at 171-72 (pointing out that carriers are liable under local law for injuries arising outside scope of Convention, such as if passenger is injured by malfunctioning escalator in the airline's terminal). Plaintiff alleges that Defendant breached the airfare contract by terminating her ability to travel to Nigeria. (Docket No. 25 at 9.) This "termination" occurred when Plaintiff was at the gate on May 12, 2005 and not the day before on May 11, 2005.

had no effect on the running of the limitation period. In addition, Plaintiff does not contest that the voluntary dismissal of her original Complaint did not toll the limitation period. (*Id*.) Plaintiff's only argument that her limitation period should be extended is that "Defendant's bankruptcy tolled the applicable statute of limitations." (*Id*.)

Plaintiff relies upon *Person Earth Movers, Inc. v. Buckland*, 136 N.C. App. 658, 525 S.E.2d 239 (2000). In that case, the state court applied 11 U.S.C. § 108(c) in concluding that the "statute of limitations for a state law claim therefore expires at the end of the limitations period described by the appropriate state law, and is extended only by that amount of time the debtor is in bankruptcy." *Id*. at 240. Section 108(c) provides that a limitation period which has not expired at the time a bankruptcy petition is filed, expires at the later of the end of such period, "including any suspension of such period occurring on or after the commencement of the case," or 30 days after the notice of the termination or expiration of the stay. 11 U.S.C. § 108(c). The *Buckland* court fails to explain, however, why the time the debtor is in bankruptcy qualifies as a "suspension" period under this section. The section itself does not so state, and the legislative history of that provision "makes evident that § 108(c)(1) refers to only 'special suspensions' that are found in non-bankruptcy provisions such as the Internal Revenue Code." *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1073 (2nd Cir. 1993). Therefore, Plaintiff Okeke may only avail herself of the 30-day extension of the limitation period which began to run upon expiration of the automatic stay – if that extension

-13-

is helpful to her. *See New Pentax Film, Inc. v. Trans World Airlines, Inc.*, 936 F. Supp. 142, 148 (S.D.N.Y. 1996) (plaintiff's filing was timely under section 108(c) when filed same day as lifting of automatic stay).

Plaintiff's two-year limitation period began to run on May 14, 2005, when her flight should have arrived, and would have expired on May 14, 2007. The bankruptcy automatic stay in this case expired on October 23, 2006, upon entry of the stipulation which lifted the stay as to Plaintiff's claims. (Docket No. 43, Ex. B.) The "later date" between November 23, 2006 (30 days after the lifting of the stay) and May 14, 2007, is May 14, 2007. Therefore, section 108(c) does not serve to extend Plaintiff's limitation period. The statute ran as to Plaintiff Okeke on May 14, 2007, and her filing of this action on June 21, 2007 falls outside the limitation period.

### 4. **Defendant's Remaining Arguments**

Because Plaintiff's filing is barred by the two-year statute of limitation period of the Montreal Convention, Defendant's remaining arguments for summary judgment need not be addressed.

## Conclusion

For the foregoing reasons, **IT IS ORDERED** that Defendant's Motion for Summary Judgment (Docket No. 42) is **GRANTED** and that this action be dismissed with prejudice. A separate judgment will be entered contemporaneously with this Memorandum Opinion and Order.

/s/ P. Trevor Sharp
United States Magistrate Judge

Date: February 26, 2010